UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RILLITO RIVER SOLAR, LLC dba ECOFASTEN SOLAR,<br><br>           Plaintiff,<br><br>     v.<br><br>BAMBOO INDUSTRIES, LLC dba SOLARHOOKS,<br><br>           Defendant. | No. 2:17-cv-00181-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendant Bamboo Industries, LLC's ("Defendant") Motion for Summary Judgment.  (ECF No. 64.)  Plaintiff Rillito River Solar, LLC ("Plaintiff") filed an opposition.  (ECF No. 65.)  Defendant filed a reply.  (ECF No. 67.)  Also before the Court is Plaintiff's Motion to Strike.  (ECF No. 69.)  Defendant filed an opposition.  (ECF No. 70.)  Plaintiff filed a reply.  (ECF No. 71.)  For the reasons set forth below, the Court GRANTS Defendant's motion and DENIES Plaintiff's motion as moot.

///

///

///

///

///

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff accuses Defendant of infringing five patents: U.S. Patent Nos. 8,153,700 ("the '700 patent"); 9,134,044 ("the '044 patent"); 9,447,988 ("the '988 patent"); 9,774,292 ("the '292 patent"); and 9,793,853 ("the '853 patent") (collectively, the "Asserted Patents").  (ECF No. 66 at 2.)  The Asserted Patents are generally directed to roof mounting systems used to mount components such as solar panels, snow fences, or antennas to a roof.  (*Id.*)

Defendant sells roof mount hardware for solar panels, including the "Composition Flashing Kit" and the "Tile Replacement System" products.  (*Id.*)  The Composition Flashing Kit includes: (1) a lag screw; (2) an EPDM bonded washer; (3) an L-foot bracket; (4) an EPDM seal; and (5) a flashing.  (*Id.* at 3.)  The Tile Replacement System includes: (1) a stainless-steel bolt; (2) a stainless-steel EPDM bonded washer; (3) an L-foot bracket; (4) an EPDM seal; (5) a flashing (S-tile version shown); (6) a stainless-steel base; and (7) 3.5" #14 Lag Screws.  (*Id.* at 5.)




Plaintiff alleges the Composition Flashing Kit is an infringing product for the '700 patent and the Tile Replacement System is an infringing product for the '044, '988, '292, and '853 patents.  (*Id.* at 6.)  Defendant filed the instant motion for summary judgment on March 21, 2019, arguing that Plaintiff has failed to show infringement and, alternatively, the patents at issue are not valid.  (ECF No. 64.)

///

///

2

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1  trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

2  to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

3  trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

4  note on 1963 amendments).

5        In resolving the summary judgment motion, the court examines the pleadings, depositions,

6  answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

7  R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

8  of the opposing party is to be believed and all reasonable inferences that may be drawn from the

9  facts pleaded must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

10  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

11  produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*

12  *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally,

13  to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more

14  than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

15  *Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

16  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

17      **III.**  **ANALYSIS**

18        Plaintiff concedes the Court should grant Defendant's motion as to Claims Two, Three,

19  and Five, which correspond to the '044, '988, and '853 patents.  (ECF No. 65 at 5.)  As such, the

20  Court GRANTS Defendant's motion as to the infringement claims alleged in Claims Two, Three,

21  and Five.  The Court will only address the parties' remaining arguments as to Claims One and

22  Four, which correspond to the '700 and '292 patents.[1]

23  ///

24

---

25  [1]    As will be discussed, the Court finds Plaintiff has not met its burden to show Defendant infringed any of the Asserted Patents.  Therefore, the Court need not and does not address

26  invalidity, which Defendant raised as an affirmative defense.  *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1481 (Fed. Cir. 1998); *see also MEMC Elec. Materials v.*

27  *Mitsubishi Materials Silicon Corp.*, No. C 01-4925 SBA, 2004 WL 5363615, at *2 (N.D. Cal. Apr. 23, 2004) ("[U]pon a finding that the patent at issue was not infringed, the Court may, in its

28  discretion, decline to reach the issue of validity.").

A.      Claim One ('700 Patent)

Defendant argues it has not infringed the '700 patent.  (ECF No. 64-1 at 10.)  In opposition, Plaintiff argues the Composition Flashing Kit infringes the '700 patent because it "indisputably contains the claimed elements disclosed" therein.  (ECF No. 65 at 7.)

"An infringement analysis involves the two-step process of construing the claims and comparing the properly construed claims to the accused product."  *Tinnus Enter., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017) (internal citation omitted).  "To prevail, the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents."  *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).  "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case."  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  If the moving party meets this initial burden, the burden shifts to the party asserting infringement to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.  "[A] party does not meet this evidentiary threshold merely by submitting the affidavit of an expert who opines that the accused device meets the claim limitations."  *Novartis*, 271 F.3d at 1051.

The Court will address Defendant's arguments as to literal infringement and the doctrine of equivalents in turn.

*i.      Literal Infringement*

It is undisputed that Plaintiff's claims as to the '700 patent require a bracket aperture "having a generally frustoconical shape" and a seal "having a generally frustoconical shape." (ECF No. 66 at 7.)  The parties agree that under the operative claim construction, "having a generally frustoconical shape" means "having, for the most part, a shape of a cone without the narrowest part of the cone (the cone may have a rounded, flat, nearly flat, or other upper portion

5

instead).” (*Id.* at 8.)  Defendant argues there is no literal infringement because neither the

Composition Flashing Kit's bracket aperture nor the seal have "for the most part, a shape of a

cone." (ECF No. 64-1 at 10.)  Defendant cites the following undisputed images of the bracket

aperture in the Composition Flashing Kit (circled below):



(ECF No. 66 at 10.)  Defendant also cites the following undisputed images of the seal in the

Composition Flashing Kit:



(*Id.*)

In addition, Defendant cites the declaration of Philip Dregger, a Registered Roof

Consultant and professional engineer Defendant retained to provide an expert opinion relating to

questions of patent validity and patent infringement.  (ECF No. 64-13 at 1.)  Dregger states "a

cone, under the customary and ordinary meaning that a person having ordinary skill in the art

would give it in light of the specification of the '700 patent. . ., [is] a shape having a curved base

(e.g., a circle), a vertex, and sides formed by straight lines connecting the vertex to the curved

base." (*Id.* at 27.)  Dregger further states, "[o]ne distinguishing characteristic of a cone is a

constant, straight, sloped side — since the sides of a cone are formed by straight lines connecting

the edge of the base to the vertex, a cone's sides follow a constant, straight slope." (*Id.*)  Dregger

1   opines that the shape of the bracket aperture and seal in the Composition Flashing Kit are, for the

2   most part, cylindrical — *not* conical.  (*Id.* at 28.)  Defendant also notes that Plaintiff did not

3   submit an expert report on the issues of infringement.  (ECF No. 64-1 at 11.)

4         Defendant lastly points to Figure 53, which includes "substantially" or "generally"

5   frustoconical shapes according to the '700 patent specification.  (*Id.* at 11–12 (citing ECF No. 64-

6   3 at 29, 39).)  Defendant argues Figure 53 depicts shapes with constantly sloped sides that are

7   characteristic of a cone and substantially differ from the shape of the seal and bracket aperture of

8   the Composition Flashing Kit.  (*Id.* at 12.)  Defendant provides a table (reproduced below) to

9   show the comparison: (1) an outline (left, in red) of the bracket aperture and seal in the

10  Composition Flashing Kit; (2) an outline (middle, in blue) of a bracket aperture in Figure 53,

11  which the '700 patent describes as "having a substantially frustoconical shape"; and (3) an outline

12  (right, in green) of a seal in Figure 53, which the '700 patent describes as "having a generally

13  frustoconical shape."  (*Id.*)

14

15      

16

17

18

19        In opposition, Plaintiff argues "[w]hile the Composition Flashing Kit's seal and bracket

20  aperture may have a *substantially cylindrical* shape, that does not preclude that they too have a

21  *generally frustoconical* shape."  (ECF No. 65 at 7 (emphasis in original).)  Plaintiff contends the

22  Court should not use Defendant's narrow definition of a cone and should instead allow a jury to

23  make the determination of whether the shapes at issue meet the broader definition of "generally

24  frustoconical" agreed to by the parties.  (*Id.*)  Plaintiff also challenges Defendant's definition by

25  submitting a declaration of Brian Stearns, the inventor of the '700 patent.[2]  (*Id.* at 9 (citing ECF

26

27  ───────────────
    [2]      Defendant argues in reply that Stearns's declaration is inadmissible.  (ECF No. 67 at 2.)
    However, because Stearns's declaration does not alter the Court's ruling, the Court does not
28  need not address Defendant's objection.

No. 66-1).)  Plaintiff argues Stearns is a person of ordinary skill in the art who is of the opinion that "an object 'having, for the most part, a shape of a cone' need not have sloped sides or have 'curved base, a vertex, and sides formed by [straight] lines connecting the vertex to the curved base.'"  (ECF No. 66-1 at 3.)  Stearns asserts "[w]hile a cone certainly could have these characteristics, an object 'having, for the most part, a shape of a cone' is not limited to such a basic description."  (*Id.*)

Plaintiff further argues "Defendant cannot earnestly claim that the shape disclosed in the '700 [patent] is limited *only* to [the] particular embodiment of a cone [described by Degger] as it would require the Court to ignore specification language and other embodiments."  (ECF No. 65 at 9 (emphasis in original).)  More specifically, Plaintiff cites Figures 6, 7, 8 and 13 — which Plaintiff argues illustrate other embodiments "having a generally frustoconical shape" — and other specification language to argue that the bracket aperture and seal can be *both* substantially cylindrical *and* generally frustoconical.  (*Id.* at 9–10 (citing ECF No. 64-3 at 8, 10, 12).)  Plaintiff argues "[t]he '700 patent clearly discloses a range of shapes that constitute 'having a generally frustoconical shape' that indisputably covers the Composition Flashing Kit."  (*Id.* at 10.)

In reply, Defendant argues the parties' agreed-to construction of "generally frustoconical" requires a cone and Plaintiff "has failed to point to any characteristic of the accused seal or bracket aperture that is conical."  (ECF No. 67 at 4.)  As to Plaintiff's reliance on Figures 6, 7, 8, and 13, Defendant argues Figure 13 does not show a "frustoconical" or "conical" bracket aperture and Figures 6–8 show a seal with constantly sloped sides (the distinguishing characteristic of a cone), unlike the seal in the Composition Flashing Kit.  (*Id.* at 5.)  Defendant stresses that Figure 53 is the best example from the '700 patent specification to guide the Court in what "having, for the most part, a shape of a cone" means because it is the only embodiment described as having a "generally frustoconical" seal and a "substantially frustoconical" bracket aperture.  (*Id.*)

The Court agrees with Defendant that Plaintiff has not shown literal infringement.  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims . . . If even one limitation is missing or not met as claimed, there is no literal infringement."  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir.

1998).  Plaintiff's Infringement Contentions allege Defendant infringes claims 23, 24, 27, and 33–35 of the '700 patent.  (ECF No. 66 at 7.)  Those claims require, among other things, a bracket aperture and seal "having a generally frustoconical shape" (ECF No. 64-3 at 40), which the parties have agreed means "having, for the most part, a shape of a cone without the narrowest part of the cone (the cone may have a rounded, flat, nearly flat, or other upper portion instead)."  (*Id.* at 8.)  The disagreement lies in the meaning of "having, for the most part, a shape of a cone."

Although Plaintiff argues the issue should go before a jury, "a mere dispute over the meaning of a term does not itself create an issue of fact."  *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989).  "When legal 'experts' offer their conflicting views of how the patent should be construed, or where the legal expert's view of how the patent should be construed conflicts with the patent document itself, such conflict does not create a question of fact nor can the expert opinion bind the court or relieve the court of its obligation to construe the claims according to the tenor of the patent."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995).  In construing claim language, "the words of a claim are generally given their ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citation omitted).  "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Id.* at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314.  "In such circumstances, general purpose dictionaries may be helpful."  *Id.*

Defendant's definition is well-supported.  Defendant's expert defines a cone as "a shape having a curved base (e.g., a circle), a vertex, and sides formed by straight lines connecting the vertex to the curved base" which has sides that "follow a constant, straight slope."  (ECF No. 64-13 at 27.)  As an example, Defendant points to Figure 53, which the specification describes as

9

1    being "frustoconical" and which has sloped sides consistent with Defendant's definition.  (ECF

2    No. 64-3 at 29, 39.)  It also bears mentioning that Defendant's definition is consistent with

3    Merriam-Webster, which defines "cone" as follows: "a solid generated by rotating a right triangle

4    about one of its legs"; "a solid bounded by a circular or other closed plane base and the surface

5    formed by line segments joining every point of the boundary of the base to a common vertex";

6    and "a surface traced by a moving straight line passing through a fixed vertex."  Merriam-

7    Webster, https://www.merriam-webster.com/dictionary/cone (last visited October 19, 2021).

8         Although Plaintiff asks the Court not to use Defendant's definition, Plaintiff does not

9    provide an alternative definition.  Instead, Plaintiff cites Stearns's assertion that while a cone

10   "certainly could" have the characteristics in Defendant's definition, it "is not limited to such a

11   basic description."  (ECF No. 66-1 at 3.)  Not only does Plaintiff fail to expand on Stearns's

12   vague statement, but it also fails to provide any evidence to suggest the bracket aperture and seal

13   in the Composition Flashing Kit have a shape that is at all — much less "for the most part" — the

14   shape of a cone under any rational interpretation of the phrase.  Plaintiff relies on Figures 6, 7, 8,

15   and 13 but fails to cite any part of the specification indicating that those figures depict

16   "frustoconical" shapes.  (ECF No. 65 at 9.)  To the contrary, Plaintiff cites a portion of the

17   specification stating that Figure 13 discloses an embodiment that has a "substantially cylindrical"

18   bracket aperture.  (*Id.*)  As for Figures 6–8, the Court agrees with Defendant that those figures

19   depict a seal that appears to conform to Defendant's definition and differs from the seal in the

20   Composition Flashing Kit.  (ECF No. 64-3 at 8–10.)

21        In sum, Defendant has provided a definition of cone that is consistent with the ordinary

22   meaning of the term, consistent with the specification, and is essentially unrebutted.  *See K.H.S.*

23   *Musical Instrument Co. v. Ultimate Support Sys., Inc.*, No. LACV1102455JAKEX, 2013 WL

24   12244318, at *5 (C.D. Cal. Mar. 4, 2013) (concluding that the plaintiff had not provided any

25   reason for the court to interpret a disputed term in a manner inconsistent with its well-accepted

26   meaning and noting that Plaintiff's expert's "unsupported opinion that perpendicular could mean

27   other angles [was] immaterial"); *see also Phillips*, 415 F.3d at 1318 ("[C]onclusory, unsupported

28   assertions by experts as to the definition of a claim term are not useful to a court.").  Defendant

10

1   has also provided evidence that the Composition Flashing Kit does not contain every limitation in

2   the asserted claims — namely, a seal and bracket aperture with a "generally frustoconical shape."

3   *See Novartis*, 271 F.3d at 1051.  For its part, Plaintiff has not met its burden to set forth "specific

4   facts showing there is a genuine issue for trial" as to whether the seal and bracket aperture in the

5   Composition Flashing Kit have a "generally frustoconical shape."  *See Anderson*, 477 U.S. at 248.

6   Accordingly, the Court GRANTS summary judgment in favor of Defendant on the issue of literal

7   infringement of the '700 patent.

8                      *ii.      Doctrine of Equivalents*

9           Defendant also argues Plaintiff fails to "provide any of the required analysis to allege

10   infringement under the doctrine of equivalents."  (ECF No. 64-1 at 5.)  Plaintiff does not respond

11   to this argument in its opposition.  (*See* ECF No. 65.)

12          Under the doctrine of equivalents, "[a] patentee must establish equivalency on a

13   limitation-by-limitation basis by particularized testimony and linking argument as to the

14   insubstantiality of the differences between the claimed invention and the accused device or

15   process."  *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir.

16   2016) (quotations omitted).  Broad, scant, conclusory statements of equivalence are insufficient.

17   *Id.* at 1342–43.  "The party asserting infringement must present *evidence* and *argument*

18   concerning the doctrine and *each* of its *elements*."  *Lear Siegler, Inc. v. Sealy Mattress Co. of*

19   *Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) (emphasis in original).

20          As Defendant correctly points out, Plaintiff has not identified which elements require the

21   doctrine of equivalents, has not raised separate arguments regarding the doctrine of equivalents,

22   and has not submitted any evidence on the issue.  Plaintiff merely asserts "[t]o the extent that any

23   claim is not literally present [in] the accused products, [Plaintiff] contends that the claim(s) [are]

24   present under the doctrine of equivalents."  (ECF No. 66 at 7.)  This is insufficient to create a

25   triable issue of fact.  *See Lear Siegler, Inc.*, 873 F.2d at 1425 ("The evidence and argument on the

26   doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").

27   Therefore, the Court GRANTS summary judgment in favor of Defendant on the issue of

28   infringement of the '700 patent under the doctrine of equivalents.

11

1    Because Plaintiff has not shown Defendant infringed the '700 patent either literally or

2    under the doctrine of equivalents, the Court GRANTS Defendant's motion as to Claim One based

3    on Defendant's noninfringement.  *See Bayer AG*, 212 F.3d at 1247.

4             B.    Claim Four ('292 Patent)

5    Defendant next argues it did not infringe the '292 patent because it did not use, offer to

6    sell, or import the Tile Replacement System after the issue date of the '292 patent.  (ECF No. 64-

7    1 at 14–15.)  More specifically, Defendant argues it is undisputed the '292 patent issued on

8    September 26, 2017, and Defendant did not sell any Tile Replacement System after April 11,

9    2017.  (*Id.*)

10   In opposition, Plaintiff does not dispute that Defendant cannot be held liable for conduct

11   prior to the issue date of the '292 patent.  *See* 35 U.S.C. § 271(a) (limiting acts of infringement to

12   "during the term of the patent").  Nor does Plaintiff dispute that Defendant has not sold an

13   allegedly infringing Tile Replacement System since the '292 patent issued.  (ECF No. 65 at 10.)

14   However, Plaintiff argues "there is a factual dispute as to whether [Defendant] has *offered* the

15   infringing product for sale" after the patent issue date — which would constitute patent

16   infringement regardless of whether a sale occurred — because Defendant "continues to maintain

17   marketing materials for the Tile Replacement System on the internet."  (*Id.*)  As evidence,

18   Plaintiff cites a PDF version of a document titled "S Tile Replacement System" Assembly Sheet,

19   which Stearns allegedly accessed via Google search on April 3, 2019.  (ECF No. 66-1 at 4, 8.)

20   Patent infringement law establishes liability for an offer to sell "according to the norms of

21   traditional contractual analysis."  *MEMC Elec. Materials, Inc.*, 420 F.3d at 1376 (citing 35 U.S.C.

22   § 271(a)).  In other words, "the defendant must communicate a manifestation of willingness to

23   enter into a bargain, so made as to justify another person in understanding that his assent to that

24   bargain is invited and will conclude it."  *Id.* (internal quotation marks and citation omitted).

25   In the instant case, Plaintiff fails to provide sufficient evidence to lend even a reasonable

26   inference that Defendant offered to sell the allegedly infringing product after the '292 patent

27   issued.  First, although Stearns vaguely indicated he accessed the Assembly Sheet via a Google

28   search in 2019, there is no date on the Assembly Sheet itself and Plaintiff fails to provide

1   evidence that Defendant made the Assembly Sheet accessible in such a way that might suggest

2   the product has been offered for sale after the patent issue date.  Second, the Assembly Sheet does

3   not contain any price terms and thus "cannot be construed as an 'offer' . . . [that could be made]

4   into a binding contract by simple acceptance."  *See id.* (finding product descriptions did not

5   constitute an offer to sell); *see also 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d

6   1373, 1379 (Fed. Cir. 1998) (finding an offer to sell where the defendants provided potential

7   California customers with price quotations, brochures, specification sheets, videos, and sample

8   parts related to their product).  Accordingly, no reasonable jury could find that the Assembly

9   Sheet — Plaintiff's sole evidence on the issue — shows that Defendant offered to sell the Tile

10  Replacement System after the '292 patent issued.

11          As such, the Court GRANTS summary judgment in favor of Defendant as to Claim Four

12  based on Defendant's noninfringement of the '292 patent.  *See Bayer AG*, 212 F.3d at 1247.

13          **IV.   CONCLUSION**

14          For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary

15  Judgment.  (ECF No. 64.)  Because Plaintiff has failed to produce evidence sufficient to show

16  infringement of any of the Asserted Patents, the Court declines to rule on Defendant's invalidity

17  defense.  Further, because the Court did not rely on any of the disputed materials attached to

18  Defendant's reply, the Court DENIES Plaintiff's Motion to Strike (ECF No. 69) as moot.  The

19  Clerk of Court is directed to enter judgment in favor of Defendant on Plaintiff's claims for

20  infringement of the following patents: U.S. Patent Nos. 8,153,700; 9,134,044; 9,447,988;

21  9,774,292; and 9,793,853.  This case is closed.

22          IT IS SO ORDERED.

23  Date:  November 8, 2021

24

25

26                                          Troy L. Nunley
                                            United States District Judge
27

28

                                            13